UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CAROL LANNAN and ANN WINN, on behalf of themselves and others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LEVY & WHITE and ROBERT R. WHITE, ESQ.,<br><br>Defendants. | Case No. 1:14-cv-13866 |

PLAINTIFFS' REPLY MEMORANDUM IN SUPPORT OF
PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGEMENT

I.  Like Prejudgment Interest, the Statute of Limitations for Nonpayment Does Not Begin to Run Prior to the Time Payment is Due

A.  *Jenney v. Airtek*, On Which White Principally Relies, Addressed Entirely Different Issues

When originally seeking summary judgment, White advanced the patently irrational argument that a breach of the duty to pay for such services occurs before the recipient of the services knows how much to pay or is asked to pay, and so prejudgment interest runs from the date of service. In other words, according to White, a duty is breached before there is a duty. This is nonsense.

White then argued by analogy that the statute of limitations begins to run regardless of whether and when a request for payment for services is made, but offered no support for this proposition. Now, grasping at straws, he cites mere dicta in a case which in turn relies only on an inapposite mid-nineteenth century decision.

1

As White admits (Doc. 53 at page 2), the issue in *Jenney v. Airtek*, 402 Mass. 152 (1988), was the relationship between "services rendered with respect to the tolling of the statute of limitations." Tolling during the course of an ongoing relationship is irrelevant here.

The Court in *Jenney* gratuitously made a statement which Defendant invokes, but the statement was dicta in a distinguishable context and therefore is not binding on this Court. The statement was that a bill for services by a lawyer employed under a contract need not be sent to start the statute of limitations. Not only was this statement unnecessary to the decision, but the Court cited no Massachusetts authority that is actually on point in support of it – just a nineteenth century case that did not address the question of whether billing is necessary to start the limitations period.

There were two issues before the court in *Jenney*, but neither turned on the question Defendant asks this Court to decide: whether the statute of limitations for breach of quasi-contract begins before billing and before the date payment is due. The Court first analyzed the plaintiff lawyer's standard breach of contract claim for $15,712 for services which she had billed prior to termination of the representation. Airtek had explicitly agreed to pay this sum within 45 days of billing. Consistent with black letter law, the Court held that Airtek's breach of contract occurred when it failed to pay Jenney by the agreed due date. *Id*., at 154.

The second issue was with respect to a bill for $6,364 for services not billed prior to termination. The bill was sent on June 21, 1974. Jenney's suit was filed on June 23, 1980, more than six years after the date of billing. Jenney therefore did not argue the question here -- whether as to this bill, the statute began to run only upon billing -- because that argument would not have helped her. Instead, she contended that the statute did not begin to run until a reasonable time after the billing. The court rejected that contention, holding that the statute of limitations is

2

not tolled until a reasonable time after the date of billing. But that holding is irrelevant to the issue now before this Court.

In the course of its discussion, the *Jenney* court cited a 125 year old case, *Elliott v. Lawton*, 7 Allen 274 (1863), as supposedly showing that "a cause of action for legal fees accrues when the attorney's services are terminated." The Court's dicta was an overly broad and inaccurate reading of the actual holding in *Elliott*. There, the issue was whether the statute of limitations for legal services that were billed during the course of litigation begins to run upon billing, or rather does the statute begin to run only when the suit is terminated – the tolling question mentioned above. The *Elliott* court had no occasion to consider whether the statute began immediately on termination of the attorney-client relationship, on the one hand, or rather only after a bill was sent following termination, on the other.  In the case before it, the claim was not barred even using the earlier date of termination of services. Thus, *Elliott* does not stand for the proposition that the statute of limitations begins to run as soon as the attorney's services are rendered regardless of whether a bill has been sent for such services. Similarly, in Williston on Contracts, also cited in *Jenney*, the question at issue in the cited section was whether, when a contract is a continuing one, the statutory period does not begin to run until the time when the final performance was due under the contract, as opposed to beginning to run after partial performance.  Nor does the ALR the *Jenney* court cited cover the question Defendant has raised: namely, whether the statute of limitations in an action on quasi-contract begins immediately on the date services are rendered, or only after some request for payment of such services is made and the obligor knows how much to pay.

       **B.   No Relevant Case Law Supports White's Position, And White Fails To Meaningfully Address Overwhelming Case Law To The Contrary**

Even White admits that a claim for breach of contract "accrues on the date of breach," and that correspondingly the statute of limitations begins to run on the date of that breach. White Opposition, at 1-2. It is hornbook contract law that there can be no *breach* of an obligation to pay monies until the monies are owed. For ambulance or other services provided under a quasi-contract, a breach of the duty to pay does not occur on the date or dates services are provided, but only when payment is not made by the date it is due. Duties cannot be breached until they arise and then there is nonperformance.

This proposition is further supported by the Restatement (Second) of Contracts analysis of the jurisprudence on the precise issue in this case: how to compute the payment of interest on contracts. As Comments b and c to § 354, "Interest as Damages," explain:

> *b. Performance must be due.* Interest is not payable as damages for non-performance until performance is due. ..
> *c. Where amount due is sufficiently definite.* Under the rule stated in Subsection (1), a party is not chargeable with interest on a sum unless its amount is fixed by the contract or he could have determined its amount with reasonable certainty so that he could have made a proper tender. Unless otherwise agreed, interest is always recoverable for the non-payment of money **once payment has become due and there has been a breach**. This rule applies to debts due for money lent, goods sold **or services performed**, including installments due on a construction contract. (Emphasis added).

Massachusetts case law is consistently to the same effect. Of the cases discussed by Plaintiffs in their Memorandum in Opposition to Summary Judgment, Doc. 43 at 18-19, the following specifically address prejudgment interest in the context of amounts owed for services rendered, and uniformly hold that it does not begin to run until a bill is sent. See, e.g., *Hurvitz v. Folkenflik*, 76 Mass. App. 1113 (2010) (claims for attorney's fees based in quantum meruit); *Starr v. Rubenstein*, 2004 Mass. App. Div. 124 (2004) (accounting firm testified at trial in a "keeper of the records" capacity, then sent an invoice to the law firm for the time spent locating

4

the files and testifying); *Analysis Grp., Inc. v. Central Florida Investments*, 629 F.3d. 18 (1st Cir. 2010)(applying Massachusetts law and holding that submission of invoice by expert witness established date of demand for purposes of calculating prejudgment interest); *Bushkin Associates, Inc. v. Raytheon Co.*, 906 F2d 11, 18 (1st Cir.1990) (applying Massachusetts law, upholding an award of prejudgment interest on a quantum meruit claim which had been entered from the date of demand, not the earlier date services were last performed).

These previously-cited decisions are compelling support for Plaintiffs' position that prejudgment interest in a quasi-contract claim under §6C does not begin to run until a bill is sent. Tellingly, Defendant has not even attempted to distinguish any of them.

The general principle that a party who receives services under a quasi-contract cannot be considered in breach of a duty to pay until informed of how much she owes is well-illustrated in a case which coincidentally also involved the provision of medical services.  The court in *Church v. Accretive Health, Inc.*, 2015 WL 7572338 at *9 (S.D. Ala. November 24, 2015) analyzed the question of when is a debt in default for purposes of the FDCPA, but it's analysis was based on general principles that are equally applicable here:

> Accretive Health has made a compelling showing that Church's debt to Providence [Hospital] was not in default as of January 12, 2014. At that time, neither Providence nor anyone else had ever sent Church a bill or otherwise contacted her to request or demand that she pay that debt. No one at Providence had ever told Church either (i) that she owed anything for the November 2012 preoperative medical care, or (ii) what the amount outstanding was. **It would defy logic, reason, and common sense for a consumer account to be classified as "in default' when the creditor had never previously sent a bill or otherwise contacted the consumer about the debt, and the consumer had no inkling of the amount, or even the existence of, the debt.** (Emphasis added)

**II.      Defendant's Cases from the Nineteenth Century decisions are Irrelevant**

Defendant concedes that G.L. c. 231, § 6C, enacted in 1968, abrogated the common law of prejudgment interest, but insists on citing to three irrelevant cases from the Nineteenth Century. The issue in *Frazer v. Bigelow Carpet Co.*, 141 Mass. 126 (1886), was the right to prejudgment interest for a tortious loss, not under a contract action, which is the subject of M.G.L.A. 231 § 6C. *Dodge v. Perkins*, 9 Pick. 368, 375 (1830), is a case where, as Defendant himself notes, the controlling substantive "law by implication makes it the duty of the party to pay over money to the owner without any previous demand on his part." There is no such duty on one who receives ambulance services. Worse yet, Defendant misrepresents the holding of *Goff v. Inhabitants of Rehoboth*, 2 Cush. 475, 479 (1848). Defendant offers what purports to be a quote from the court's opinion, but in fact the quotation is taken from a recitation of *the defendant's positon* that was included in a section prior to the court's opinion (a common practice in Nineteenth Century reports). The Court's actual holding was that "If, in any case, a demand would lay the foundation for a claim of interest, it must be a separate and distinct demand for a debt or sum of money, which is afterwards admitted or proved to be due." *Id*. at 479. Plaintiffs fully agree with this statement of Massachusetts law.

### III.   Defendant's Responses to Plaintiffs' Other Contentions Miss the Mark

White's Opposition to Plaintiffs' Motion for Partial Summary Judgment, Doc. 53, contains no additional arguments, but incorporates by reference those in his Second Reply Memorandum in in Opposition to Motion for Summary Judgment, Doc. 52. Most of the arguments in the Second Reply Memorandum have already been adequately discussed in Plaintiffs' previous two Memoranda. To avoid repetition as much as possible, only Defendant's new contentions will be addressed here.

### A. White's Small Claims Statements Didn't Just Violate Rule 2, They Misrepresented the Character and Status of all the Alleged Debts and Also the Amount of the Debts to Trinity

White distorts the first of Plaintiffs' two claims, which is that including undifferentiated inchoate prejudgment interest in the Statement of Claim was misleading to the unsophisticated consumer (Doc. 43 at P.7). Plaintiffs have made it clear that, White's view to the contrary notwithstanding, they are not merely arguing "that the violation of Rule 2(a) is a *per se* violation of the FDCPA." Doc. 52 at p.7.  As stated in previous briefing, Plaintiffs contend that Defendants' misconduct is actionable because it was deceptive and misleading to the unsophisticated consumer.  15 U.S.C.§ 1692e(2)(A) prohibits "the false representation of  the character, amount or legal status of any debt." As to both Lannan and Winn, as well as all members of the first class they seek to represent, Defendant falsely represented at least the character of the debt–by concealing that it included prejudgment interest -- and the legal status of the debt—by claiming it as due and owing without a determination by the Court of the date of breach or demand, as M.G.L. c. 231 §6C explicitly requires.[1]  Nor are Plaintiffs attempting to enforce a mere procedural requirement. See Doc. 43 at p.9.  Rule 2 embodies a substantive requirement of full disclosure to small claims defendants in recognition of their vulnerability to being misled in the absence of proper disclosures.  Indeed, Rule 2 represents the fulfilment of one of the purposes of the FDCPA: "to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C.§ 1692.

It is for this reason, among others, that Defendant's citation to a recent Seventh Circuit decision is not persuasive here. The discussion in *Bentrud v. Bowman, Heintz, Boscia & Vician, P.C.*, 794 F.3d 871 (7th Circuit 2015), that Defendant cites arose in the context of plaintiff's

---

[1] When White miscalculated the prejudgment interest by running it from the date of service, then he also misrepresented the amount owed.

claim that the collection lawyers had unfairly resumed the state court litigation after he elected arbitration. The Court held that Bentrud's "remedy sounds in breach of contract, not the FDCPA." Here, Plaintiffs do not have some alternative remedy in contract, tort or for breach of state or federal law for a debt collector's misleadingly lumping inchoate, unawarded and undifferentiated interest in the amount claimed in a Statement of Claim. Nor do they have such a positive alternative remedy for White's seeking prejudgment interest from the date of Trinity's services. While any person who, like Lannan, had excess pre judgment interest awarded against her, can try to vacate the judgment, no court has ever held that this theoretical but impractical remedy bars an FDCPA claim for *seeking more than is owed* in the context of litigation. Authority to the contrary includes *McCollough v. Johnson, Rodenburg & Lauinger, LLC*, 637 F.3d 939 (9th Cir. 2011) (seeking an award of attorney fees in the state collection action); J*ohnson v. Riddle,* 305 F.3d 1107 (10th Cir. 2002) (adding a $250 shoplifting fee in the amount sought in state court) and *Heintz v. Jenkins*, 514 U.S. 291, 115 S.Ct. 1489 (1995) (inflating the amount claimed by adding charges for unauthorized forced placed insurance fees). Simply seeking an amount greater than that owed is a *per se* FDCPA violation. § 1692e(2)(A).

In addition, neither *Bentrud*, nor the earlier Seventh Circuit it relies on, *Beler v. Blatt,* held that §1692e, which prohibits the "false representations of the character, amount or legal status of any debt," is not actionable simply because the misleading statements were made by the debt collector in the course of state court litigation. The Sixth, Ninth and Eleventh Circuits have all held to the contrary. Doc. 41 at p. 4; see also cases cited *id*., at pp. 9-10.

Similarly, White contends that although the Judgment entered by the Court admittedly included excess prejudgment interest (which it does, even assuming *arguendo* that Trinity was entitled to interest from the date Lannan received ambulance services), this is a matter for the

state court to correct. That might be true if Plaintiff were attacking the judgment itself. But such an attack would violate the *Rooker-Feldman* doctrine and it is not the thrust of Plaintiffs' claims. Rather, plaintiffs contend that the Statements of Claim, which included undifferentiated inchoate prejudgment interest, misrepresented the character and legal status of alleged debts in violation of 15 U.S.C. 1692e(2)(A) and were misleading and deceptive to the least sophisticated consumer. Lannan's second claim is the Statements also misrepresented *the amount* of the debt she (and the second class she seeks to represent) in that prejudgment interest calculated from the date of medical service by Trinity EMS, not from the date of billing, was included. The excess prejudgment interest ultimately entered in Lannan's state court case was presented simply as an illustration of the real world harm that can occur from these misrepresentations, not because she is seeking its return. And it is undisputed that the FDCPA is a strict liability statute, with statutory damages available regardless of any pecuniary loss.

### B. The Alleged Corrective Action by Defendant is Not Ground to Deny Class Certification

Taking another stab at the propriety of class certification long after briefing on that issue has been concluded, White also contends that there are differences between the named Plaintiffs and the putative class because his representations regarding prejudgment interest would be harmful only if he has not taken "intervening corrective action" as to such judgments This argument has no merit for three reasons. First, even if White took corrective action, his misrepresentations in the statements of claim violated the FDCPA at the time they were made. Secondly, if such corrective action were relevant, which plaintiffs deny, White should know, and his records should show, whether he took it in particular matters. Yet he has not asserted any such thing in any of the affidavits he has filed in this action. Mere speculation, particularly by one in a position to know the facts, is insufficient to defeat class certification. And third, courts

find predominance even when there are some class members who may have been uninjured by the Defendant's misconduct. *In re Nexium Antitrust Litigation.* 777 F.3d 9 (1st Cir. 2015).

### C. FDCPA Casses Holding Debt Collectors Liable for Improperly Seeking Collection Costs or Attorney Fees are not Distinguishable

White's next assertion, that there is a meaningful difference between the FDCPA cases cited by Plaintiffs that find debt collectors liable for improperly seeking to assess collection costs or attorney's fees on the one hand, and those where the collector sought interest on the other, is specious. He asserts that these two categories differ because interest is "typically liquidated and immediately ascertainable by calculation." This is incorrect, as numerous cases cited by Plaintiffs in their memorandum in support of partial summary judgment show. In Massachusetts, the date of demand or breach must be established by evidence in order for the court to calculate prejudgment interest. Doc. 43 at pp. 9-10.

The section of Defendant's reply memorandum that immediately follows this discussion repeats Defendant's contentions regarding the construction of M.G.L. c. 231 §6C. Plaintiffs have responded to these arguments in the first section of this brief and in their own memorandum in support of partial summary judgment, Doc. 43 at pp. 10-13, and a separate reply is not necessary here.

### D. The Misleading Statements of Claim Have a Concrete Negative Impact on Consumers which is Cognizable under Ch. 93A

In his penultimate section, White unjustly criticizes Judge Saylor for a supposedly cursory analysis of the injury requirement under 93A. In *Gathuru v. Credit Control Services, Inc.*, 623 F.Supp.2d 113 (D. Mass. 2009), a case involving debt collector misconduct, Judge Saylor held that a demand for payment of a debt that a consumer did not owe would likely have some kind of negative impact on the recipient, particularly in terms of the assertion of legal

rights or financial decision-making. In the more recent decision cited by Defendant, which was unrelated to debt collection, he simply held that "plaintiff's *subjective* belief that she did not receive a good value, without more, is not enough to establish the existence of a chapter 93A injury." *Shaulis v. Nordstrom Inc.,* No. CV 15-10326-FDS, 2015 WL 4886080, at *10 (D. Mass. Aug. 14, 2015) (emphasis added). The holding in *Gathuru* is directly relevant to the facts of the case now before this court, while those in *Shaulis* are not remotely comparable. There can be no difference of opinion or subjective interpretation concerning the misinformation and omissions in the Statements of Claim. The impact on the reader is concrete and objective -- the unsophisticated consumer is likely to believe he/she owes more than he actually does at that time, a judgment awarding prejudgment interest on prejudgment interest is likely to be entered when the Clerk likewise is misled.

Further, a decision of the First Circuit Court of Appeals supports both *Gathuru* and the claims in this action. In *Young v. Wells Fargo Bank*, 717 Fed 3d 224, 241 (2013), the court noted that there may be exceptions to the general rule that economic injury is required for a chapter 93A claim to be viable. In cataloguing the ways in which the plaintiff there had adequately pled such injury, the court referenced the bank's mistakenly posting a notice on the plaintiff's door stating that she was in arrears on her mortgage payments, and also its continuing to supply her with misinformation about her obligations under the mortgage. These types of informational injuries are analogous to the injuries alleged here.

White also attempts to distinguish *Cunha v. LVNV Funding*, 2015 WL 5737134 (D. Mass. Sept. 30, 2015) on the ground that the court supposedly "dismissed the 93A claims premised on unfair credit reporting, failure to correct credit information, or failure to investigate a disputed debt for failure to allege economic harm." Doc. 52 at p. 20.  Not so. The court in

*Cunha* held: "To the extent Cunha's chapter 93A claim is premised on unfair credit reporting, failure to correct credit information, or failure to investigate a disputed debt, it is pre-empted by the FCRA." Id. at *5.

Even if this court were to disagree with Judge Saylor holding in *Cunha* that a misrepresentation of the amount owed is a sufficient injury under chapter 93A, the claims of all class members who, like Lannan, had judgments that included an award of prejudgment interest on prejudgment interest as a result of such a misrepresentation have suffered a palpable economic injury. And Carol Lannan, at least, has also suffered an out-of-pocket loss because she paid both this extra prejudgment interest and prejudgment interest from the date of ambulance service, neither of which she owed.[2] There can be no doubt that she is entitled to summary judgment on her 93A claim as well as her FDCPA claim.

White's final argument, regarding the statute of limitations governing Lannan's FDCPA claim, says nothing new, and has been adequately responded to in previous briefing.

## CONCLUSION

The material facts are undisputed and proven by documents on file herein, including the state court pleadings and Judgments, Defendant's Answer and Defendant's Answers to Requests for Admission and to Interrogatories. Plaintiffs have demonstrated that they are entitled to Judgment as a matter of law on both of their claims, and their Motion for Partial Summary Judgment should therefore be granted.

Dated: December 28, 2015

---

[2] As noted previously, Lannan does not seek actual damages, and plaintiffs do not seek to have certified a class for actual damages. Defendant's protestation that only minimal amounts of excess prejudgment interest were actually collected is therefore irrelevant.

Respectfully submitted,

*/s/ Charles M. Delbaum*
Charles M. Delbaum (BBO # 543225)
April Kuehnhoff (BBO # 676230)
National Consumer Law Center
7 Winthrop Square, 4th Floor
Boston, Massachusetts 02110
(617) 542-8010
(617) 542-8028 (facsimile)
cdelbaum@nclc.org
akuehnhoff@nclc.org

Elizabeth Ryan (BBO # 549632)
John Roddy (BBO # 424240)
Bailey & Glasser LLP
99 High Street, Suite 304
Boston, MA 02110
(617) 439-6730
(617) 951-3954 (facsimile)
eryan@baileyglasser.com
jroddy@baileyglasser.com

Ethan Horowitz (BBO # 674669)
Managing Director
Northeast Justice Center
50 Island Street, Ste. 203B
Lawrence MA 01840
(978) 888-0624
(978) 323-0124 (facsimile)
ehorowitz@njc-ma.org

*Attorneys for Plaintiffs and Proposed Class*

## CERTIFICATE OF SERVICE

  I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic File (NEF) on the date of filing.

            */s/ Charles M. Delbaum*

: