UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| CAROL LANNAN and ANN WINN, on behalf of themselves and others similarly situated, | * * * * | |
| Plaintiffs, | * * | Civil Action No. 14-cv-13866-IT |
| v. | * * | |
| LEVY & WHITE and ROBERT R. WHITE, ESQ., | * * * | |
| Defendants. | * | |

MEMORANDUM & ORDER

May 11, 2016

TALWANI, D.J.

I.     Introduction

        Plaintiffs are two former debtors of Trinity Emergency Medical Services ("Trinity

EMS").  Plaintiffs allege that Defendants Robert R. White and Levy & White represented Trinity

EMS as counsel in collections actions against Plaintiffs and other debtors in small claims court

and that their conduct during those small claims actions violated the Fair Debt Collection

Practices Act ("FDCPA") and Mass. Gen. Laws ch. 93A.  Before the court are Plaintiffs' Motion

for Class Certification [#30], Defendant Robert R. White's Motion for Summary Judgment

[#35], and Plaintiffs' Motion for Partial Summary Judgment [#40] as to liability.  For the

following reasons, Defendant's motion is DENIED and Plaintiffs' motions are ALLOWED.

II.     Factual Background

        Trinity Emergency Medical Services ("Trinity EMS") provided ambulance services to

Plaintiffs Carol Lannan and Ann Winn.  Defendant White, acting as counsel for Trinity EMS,

filed Statements of Claim against Plaintiffs in Massachusetts small claims court seeking to collect on behalf of Trinity EMS debt for the ambulance services.[1]

On October 2, 2013, White, as counsel for Trinity EMS, signed and submitted a Statement of Claim against Lannan to the Lowell District Court.  Def.'s Statement Material Fact for Def.'s Mot. Summ. J. ¶ 2 [#38]; Pls.' Statement Material Fact for Def.'s Mot. Summ. J. ¶ 2 [#44].  On October 15, 2013, the Lowell District Court placed the Statement of Claim on the docket and mailed it to Lannan.  Def.'s Statement Material Fact for Def.'s Mot. Summ. J. ¶ 6 [#38]; Pls.' Statement Material Fact for Def.'s Mot. Summ. J. ¶ 6 [#44].  The Statement of Claim stated that Lannan owed Trinity EMS "$1,863.83 plus $50 court costs . . . for: ambulance transport of 5/21/11."  Pls.' Statement Material Fact for Pls.' Mot. Summ. J. ¶ 1 [#42]; Def.'s Statement Material Fact for Pls.' Mot. Summ. J. ¶ 1 [#57]; Aff. Robert R. White Supp. Mot. Dismiss & Summ. J. Ex. 1 [#35-2].  Nothing in the Statement of Claim indicated that prejudgment interest was being claimed or was part of the total amount claimed.  Pls.' Statement Material Fact for Pls.' Mot. Partial Summ. J. ¶ 1 [#42]; Def.'s Statement Material Fact for Pls.' Mot. Partial Summ. J. ¶ 1 [#57].  White arrived at the $1,863 figure by adding interest from the date that Trinity EMS provided ambulance services to Lannan, even though Lannan was not invoiced for the provision of services until four to five months later.  Pls.' Statement Material Fact for Pls.' Mot. Partial Summ. J. ¶¶ 2, 5, 6 [#42]; Def.'s Statement Material Fact for Pl.'s Mot. Summ. J. ¶¶ 2, 5, 6 [#57].

Plaintiff Lannan entered into an Agreement for Judgment on February 24, 2014, for the amount stated in the Statement of Claim, plus additional prejudgment interest entered by the

---

[1] Defendant White denies that Levy & White is a separate legal entity and asserts he is Levy & White's sole proprietor.  Answer ¶ 1 [#19].

clerk of the court.  Def.'s Statement Material Fact for Def.'s Mot. Summ. J. ¶¶ 12-13 [#38]; Pls.'

Statement Material Fact for Def.'s Mot. Summ. J. ¶¶ 12-13 [#44]; Aff. Robert R. White Supp.

Mot. Dismiss & Summ. J. Ex. 3 [#35-4].

      The Statement of Claim that White served on Plaintiff Winn sometime after February 19,

2014, stated that Winn owed Trinity EMS $2,000 plus $50 in court costs.  Aff. Robert R. White

Supp. Mot. Dismiss & Summ. J. Ex. 4 [#35-5].  That amount included undifferentiated

prejudgment interest.  Pls.' Statement Material Fact for Pls.' Mot. Partial Summ. J. ¶ 8 [#42].

Winn filed a counterclaim alleging that Trinity EMS had misrepresented in the Statement of

Claim the amount of debt owed by improperly including prejudgment interest to the lump sum

amount demanded.  Def.'s Statement Material Fact for Def.'s Mot. Summ. J. ¶ 18 [#38]; Pls.'

Statement Material Fact for Def.'s Mot. Summ. J. ¶ 18 [#44].

      On November 21, 2014, Winn entered into an Agreement for Judgment for $1,200.

Def.'s Statement Material Fact for Def.'s Mot. Summ. J. ¶ 22 [#38]; Pls.' Statement Material

Fact for Def.'s Mot. Summ. J. ¶ 22 [#44]; Aff. Robert R. White Supp. Mot. Dismiss & Summ. J.

Ex. 6 [#35-7].  The agreement also provided for dismissal of Winn's counterclaim with prejudice

and a waiver of all rights of appeal.  Id.

III.    Procedural History

      On October 15, 2014, Plaintiffs commenced this action for violations of the Fair Debt

Collection Practices Act, 15 U.S.C. §§ 1692e, 1692f ("FDCPA") and Mass. Gen. Laws ch. 93, §

49, as actionable under Mass. Gen. Laws. ch. 93A, § 2 ("Chapter 93A").  Plaintiffs claim that

White's violations stemmed from his: (1) including undifferentiated, unawarded prejudgment

interest in the Statements of Claim he filed against Plaintiffs on behalf of Trinity EMS, in

violation of state law; and (2) misrepresenting the amount that Plaintiff Lannan owed when, in

violation of state law, he calculated prejudgment interest from the date that she received services, which was a date prior to any breach by her or demand by Trinity EMS.

IV.     Class Certification

A. *Proposed Classes*

Plaintiffs move to certify two classes for statutory damages, each with two subclasses.

They define the first class, the "FDCPA Class," to include:

> All individuals in Massachusetts who, since October 15, 2013, were sued or served with a complaint (a) as to whose alleged debt Defendants included prejudgment interest in the total amount claimed in a Small Claims Statement of Claim ["Subclass (a)"], or (b) where Defendants added prejudgment interest to an alleged debt to Trinity EMS for a period beginning at or about the date of service by Trinity EMS instead of the date Trinity EMS first billed for payment of its services ["Subclass (b)"].

They define the second class, the "Chapter 93A Class," identically, except that the time frame is "since October 15, 2010."[2]

B. *Proposed Classes Satisfy the Requirements of Certification*

To maintain a class action, Plaintiffs "must affirmatively demonstrate" compliance with Rule 23. Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432 (2013) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)). To do so, Plaintiffs must satisfy through evidentiary proof that they meet the requirements of both Rule 23(a) and at least one of the provisions of Rule 23(b). Comcast, 133 S. Ct. at 1432.

---

[2] The different time frames correspond to the one year statute of limitations for FDCPA claims, see 15 U.S.C. § 1692k(d), and the four year statute of limitations for Chapter 93A claims. Mass. Gen. Laws ch. 260, §5A.

### a.   Requirements Under Rule 23(a)

Under Federal Rule of Civil Procedure 23(a), the party seeking class certification must demonstrate that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class."  Fed. R. Civ. P. 23(a); see also Dukes, 564 U.S. at 345.

### i.   Numerosity

Plaintiffs must first demonstrate that the proposed class "is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  There is a "low threshold for numerosity."  Garcia-Rubiera v. Calderon, 570 F.3d 443, 460 (1st Cir. 2009) (citing Stewart v. Abraham, 275 F.3d 220, 226-27 (3d Cir. 2001) (noting that, as a general matter, "if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met.")).  The court can consider reasonable inferences drawn from the facts in determining that the numerosity requirement is satisfied.  See, e.g., Senter v. Gen. Motors Corp., 532 F.2d 511, 523 (6th Cir.), cert. denied, 429 U.S. 870 (1976).

Plaintiffs have presented evidence that there is a sufficient number of potential plaintiffs to satisfy the numerosity requirement of Rule 23(a).  As to FDCPA Subclass (a), White admits that, between October 15, 2013 and October 15, 2014, he filed more than 100 small claims statements of damages which included prejudgment interest in the amount in the space provided for the "total amount due."  Pls.' Mot. Class Certification Ex. 3 ¶ 10 [#31-3] (Response to Requests to Admit).  Given the longer time period, there may be additional plaintiffs in the proposed Chapter 93A Subclass (a).

As to subclasses (b), Defendant has admitted that he calculates prejudgment interest from the date Trinity EMS provides medical services, Pls.' Mot. Class Certification Ex. 1 ¶ 10 [#31-1] (Response to Interrogatories), Ex. 3 ¶ 8 [#31-3] (Response to Requests to Admit), and Plaintiffs have proffered evidence that Defendant has served as debt-collection counsel for 55 Trinity EMS accounts for collection between October 15, 2013 and October 15, 2014 (encompassing FDCPA Subclass (b)) and 579 accounts between October 15, 2010 and October 15, 2014 (encompassing Chapter 93A Subclass (b)).  Pls.' Mot. Class Certification Ex. 4 ¶¶ 4-5 [#31-4] (Decl. Alyssa Kutner).  The numbers are sufficient to meet the numerosity requirement.

*ii.  Commonality*

Plaintiffs must show that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  To do so, they must show that the proposed class members "have suffered the same injury."  <u>Dukes</u>, 564 U.S. at 349-50.  What matters to class certification is "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  <u>Id.</u> at 350 (internal quotation marks omitted).  Plaintiffs' claims "must depend upon a common contention" that "must be of such a nature that it is capable of classwide resolution— which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  <u>Id.</u>  In other words, the commonality requirement is satisfied where the "'questions that go to the heart of the elements of the cause of action' will 'each be answered either 'yes' or 'no' for the entire class' and 'the answers will not vary by individual class member.'"  <u>Garcia v. E.J. Amusements of N.H., Inc.</u>, 98 F. Supp. 3d 277, 285 (D. Mass. 2015) (quoting <u>Donovan v. Philip Morris USA, Inc.</u>, No. 06-12234-DJC, 2012 WL 957633, at *21 (D. Mass. Mar. 21, 2012)).

The class members claims raise the same common issues: (1) whether adding prejudgment interest to the lump sum amount demanded in a Small Claims Statement of Claim is a false, deceptive, or unfair misrepresentation in violation of the FDCPA and Chapter 93A; and (2) whether calculating prejudgment interest from the date a service is provided, and not the date of demanding payment for it, falsely represents the amount owed, in violation of the FDCPA and Chapter 93A.  Plaintiffs allege that White's conduct—adding prejudgment interest to the lump sum amount demanded in small claims complaints and calculating prejudgment interest from the date medical service is provided instead of when the demand for payment is made—affects class members in a virtually identical manner.  Commonality is therefore satisfied.

### iii.   Typicality

Rule 23(a)(3) requires that the claims and defenses of the class representatives be "typical of the claims or defenses of the class."  Typicality examines "whether the named [plaintiffs' claims] and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." Dukes, 564 U.S. at 349 n.5; see also Garcia, 98 F. Supp. 3d at 288 ("The central inquiry in determining whether a proposed class has 'typicality' is whether the class representatives' claims have the same essential characteristics as the claims of the other members of the class." (internal quotation marks omitted)).  Typicality may be defeated "where the class representatives are subject to unique defenses which threaten to become the focus of the litigation."  In re Credit Suisse-AOL Sec. Litig., 253 F.R.D. 17, 23 (D. Mass. 2008).

Plaintiffs' claims are typical of the proposed class members' claims.  White's alleged conduct—adding prejudgment interest to the lump sum amount demanded in small claims complaints and calculating prejudgment interest from the date medical service is provided

instead of when the demand for payment is made—affected them in a virtually identical way that it affected class members.  White argues that that many class members' claims differ from Plaintiffs' claims because, while Plaintiffs' small claims cases were disposed of by Agreements for Judgment,[3] many class members may have had their small claims cases against Trinity EMS disposed of by default judgment.  This difference is not material.  Regardless of how White disposed of the small claims cases he filed for Trinity EMS, White's alleged misconduct in how he *commenced* those cases against Plaintiffs and the proposed class members is the same.

White also argues that the individual Plaintiffs are subject to unique procedural defenses because (i) Plaintiff Ann Winn's claims are barred by *res judicata* as a result of her voluntary dismissal of her counterclaims against Trinity EMS for improper inclusion of debt in the small claims complaint against her; (ii) both Plaintiffs' claims are barred by collateral estoppel because they had already litigated the amount of debt that they owed to Trinity EMS; and (iii) Plaintiff Carol Lannan's FDCPA claim is time-barred because it was filed more than one year after Defendants' alleged FDCPA violation.

First, White argues that the dismissal of Winn's counterclaim against Trinity EMS bars Winn's claims here against White through claim preclusion.  "Under federal law, 'a federal court must give to a state-court judgment the same preclusive effect as would be given to that judgment under the law of the state in which the judgment was entered.'"  Torromeo v. Town of Fremont, NH, 438 F.3d 113, 115-16 (1st Cir. 2006), cert. denied 549 U.S. 886 (2006) (quoting Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984)).  Under Massachusetts law, the "invocation of claim preclusion requires three elements: (1) the identity or privity of the

---

[3] Although Defendant only addresses Plaintiff Lannan in this line of argument, both Plaintiffs appear to have disposed of their small claims cases through Agreements for Judgment.

parties to the present and prior actions, (2) identity of the cause of action, and (3) prior final

judgment on the merits." Kobrin v. Bd. of Registration in Med., 832 N.E.2d 628, 634 (Mass.

2005) (internal quotation marks omitted).

"A person who is not a party to [a] prior action but whose interest is represented by a

party may have the benefit of the judgment in the prior case." Roche v. Roche, 493 N.E.2d 523,

525 (Mass. App. Ct. 1986). However, a party "appearing in an action in one capacity, individual

or representative, is not thereby bound by or entitled to the benefits of the rules of res judicata in

a subsequent action in which he appears in another capacity." Taylor v. Moskow, No. 13-12675-

FDS, 2014 WL 2573990, at *3 (D. Mass. June 6, 2014) (quoting Cambridge Literary Properties,

Ltd. v. W. Goebel Prozellanfabrik G.m.b.H. & Co. Kg., 448 F. Supp. 2d 244, 268 (D. Mass.

2006), aff'd, 510 F.3d 77 (1st Cir. 2007)) (concluding that a plaintiff who litigated claim in prior

action as an individual not precluded from litigating same claim as representative of an LLC);

see also Restatement (Second) of Judgments § 36(2) (1982).

White argues that Trinity EMS and White were in privity because White represented

Trinity EMS as counsel in the small claims action. White has not shown or even asserted that he

had a financial or propriety interest in Trinity EMS, such as to show that Trinity EMS

represented White's interests. Cf. Cambridge Literary Properties, 448 F. Supp. 2d at 267 (res

judicata applied to attorney of litigant company in previous action because attorney was sole

shareholder of that litigant and therefore could "assert substantial control" in that litigation.). He

instead argues that his role as Trinity EMS's counsel is sufficient for him to be considered in

privity with Trinity EMS. White's mere representation of Trinity EMS, with no other additional

connection between White and Trinity EMS, does not put him in privity with Trinity. See

Cambridge Literary Properties, 448 F. Supp. 2d at 268 (no privity where attorney had no other

interest in prior litigant except "simply as a trusted lawyer"); see also Balk v. Fererstein & Smith, LLP, No. 09CV249A, 2011 WL 1560984 (W.D.N.Y. Feb. 18, 2011), adopted by 2011 WL 1557948 (W.D.N.Y. Apr. 25, 2011) (attorney-defendant in FDCPA proceeding was "not in privity with [client] in the underlying proceeding" because client's "interest was in collecting an alleged debt" while the lawyer's "interest was in providing legal representation" to the client). Because White was not in privity with Trinity EMS, res judicata does not bar Winn's action.

White has next argued that both Plaintiffs' Agreements for Judgment with Trinity EMS, whereby they agreed to the amount of money that they owed to Trinity EMS, including the amount of prejudgment interest that they owed, collaterally estop their claims against White. For issue preclusion to apply, Massachusetts law requires that "(1) there was a final judgment on the merits in the prior adjudication; (2) the party against whom preclusion is asserted was a party (or in privity with a party) to the prior adjudication; and (3) the issue in the prior adjudication was identical to the issue in the current adjudication." Kobrin, 832 N.E.2d at 634 (internal quotation marks omitted). The issue decided in prior adjudication must have been "actually litigated and determined by a valid and final judgment." Jerosz v. Palmer, 766 N.E.2d 482, 487 (Mass. 2002) (internal quotation marks omitted).

Both Winn and Lannan disposed of Trinity EMS's small claims actions against them by Agreements for Judgment. Generally, in "the case of a judgment entered by . . . consent . . . none of the issues is actually litigated" for purposes of issue preclusion. Turner v. Cmty. Homeowner's Ass'n, Inc., 816 N.E.2d 537, 544 (Mass. App. Ct. 2004) (quoting Restatement (Second) of Judgments § 27 (1982)). Judgments by agreement "generally [are] not given preclusive effect in future litigation, unless the judgment manifests an intent of the parties that it have such effect." Pinshaw v. Metro. Dist. Comm'n, 524 N.E.2d 1351, 1358 n.14 (Mass. 1998).

The Agreements for Judgment here manifested no intent that they have any preclusive effect in later litigation; nor did they contain any factual determinations as to the appropriateness and legality of White's actions as counsel to Trinity EMS.  Instead, they simply memorialized the amount which Plaintiffs agreed to pay to Trinity EMS to satisfy their debt obligations.[4]  Because the issue of whether White's conduct violated the FDCPA and Chapter 93A was not litigated, Plaintiffs are therefore not precluded from litigating that issue here.

White further argues that Plaintiff Lannan's FDCPA claim falls outside of the one-year statute of limitations applicable to the FDCPA and is therefore time-barred.  15 U.S.C. § 1692k(d).  An FDCPA claim arising from a debt collection suit accrues when the plaintiff is put on notice of the alleged violation, see Cunha v. LVNV Funding, LLC, No. 13-11418-MLW, 2015 WL 5737134, at *4 (D. Mass. Sept. 30, 2015), generally by the filing or service of the complaint in the debt collection suit.  See Serna v. Law Offices of Joseph Onwuteaka P.C., 732 F.3d 440, 446 (5th Cir. 2013) (claim accrues on date of service); Johnson v. Riddle, 305 F.3d 1107, 1113 (10th Cir. 2002) (claim accrues on date of service); Naas v. Stolman, 130 F.3d 892, 893 (9th Cir. 1997) (claim accrues on date of filing).

Here, White argues that, because he "commenced" the small claims action on October 2, 2013, when he signed and submitted the Statement of Claim, Lannan's FDCPA complaint was time-barred when it was filed October 15, 2014.  Lannan was not, and could not have been, put on notice of the Statement of Claim until after the clerk filed the Statement of Claim on the

---

[4] Plaintiff Winn's counterclaim against Trinity EMS, which Plaintiff agreed to dismiss with prejudice as part of her settlement, does not change the issue preclusion analysis.  Under Massachusetts law, stipulations of dismissal are not accorded the same effect as a final judgment on the merits.  Jerosz, 766 N.E.2d at 491 (noting that according a "stipulation of dismissal issue preclusive effect would be to impose too burdensome a cost on settlement.").

public docket and mailed it to her on October 15, 2013.  See Am. Compl. Ex. C [#9-3].[5]

Accordingly, the filing of the FDCPA complaint on October 15, 2014 was timely.

### iv. Adequacy

Under Rule 23(a)(4), the class representatives must "fairly and adequately protect the

interests of the class."  To meet the adequacy requirement, the "moving party must show first

that the interests of the representative party will not conflict with the interests of any of the class

members, and second, that counsel chosen by the representative party is qualified, experienced

and able to vigorously conduct the proposed litigation."  Andrews v. Bechtel Power Corp., 780

F.2d 124, 130 (1st Cir. 1985).

First, Plaintiffs have produced evidence that there is no conflict or antagonism between

the interests of Plaintiffs and the proposed class members, and the injuries suffered by Plaintiffs

are the same as the proposed class.  One of the Plaintiffs, Carol Lannan, even rejected an

individual offer of settlement made to her early in the litigation, showing her loyalty to the class.

See Pls.' Mot. Class Certification Ex. 2 ¶ 3 (Declaration of Charles Delbaum).[6]

Second, Plaintiffs have shown that proposed class counsel are qualified, experienced, and

have extensive knowledge of the applicable law, and the court is satisfied that counsel can

adequately and fairly represent class interests.  See Fed. R. Civ. P. 23(g)(1).  Lead counsel,

Charles Delbaum of the National Consumer Law Center, has 44 years of experience as a

litigator, has been counsel in more than twenty-five consumer class actions, and is the co-author

---

[5] Defendants also argue that Lannan's claim is time-barred because her complaint in this action does not *allege* the date that she was served with the small claims Statement of Claim.  The complaint itself does not need to allege this date; the statute of limitations is an affirmative defense.  See Fed. R. Civ. P. 8(c)(1).

[6] To the extent that Defendants argue that Plaintiffs are not adequate representatives because they are subject to unique defenses, the court has addressed that in the Typicality section of the Order.

of books and treatises on consumer class actions and fair debt collection.  See Pls.' Mot. Class

Certification Ex. 5 [#31-5] (Statement of Experience of Charles Delbaum).  Other counsel for

Plaintiffs also have experience in litigating class actions and FDCPA claims.  See Pls.' Mot.

Class Certification Ex. 6, 7 [#31-5, 31-6] (Declarations of Elizabeth Ryan and Ethan Horowitz).

Counsel has acted diligently on behalf of Plaintiffs, identifying and investigating the claims in

this action and engaging in discovery on behalf of Plaintiffs.  See Fed. R. Civ. P. 23(g)(1)(A)(i);

Pls.' Mot. Class Certification Ex. 2 ¶ 2 [#31-2] (Declaration of Charles Delbaum).

### b.  Requirements Under Rule 23(b)

In addition to satisfying the requirements of Rule 23(a), a party seeking class certification

"must also satisfy through evidentiary proof at least one of the provisions of Rule 23(b)."

Comcast, 133 S. Ct. at 1432.  Here, Plaintiffs argue that they meet the provision set forth in Rule

23(b)(2), which requires that "the questions of law or fact common to class members

predominate over any questions affecting only individual members, and that a class action is

superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed.

R. Civ. P. 23(b)(2).

### i.  Predominance

The predominance inquiry requires the court to "formulate some prediction as to how

specific issues will play out in order to determine whether common or individual issues

predominate in a given case."  Waste Mgmt. Holdings, Inc. v. Mowbray, 208 F.3d 288, 298 (1st

Cir. 2000).  The requirement is often "readily met" in "cases alleging consumer or securities

fraud."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591, 625 (1997).

Here, the class claims all arise from White's standardized conduct of including

undifferentiated prejudgment interest to the lump sum amount demanded in Statements of Claim

and calculating prejudgment interest from the services are provided instead of the date payment

is demanded for those services.  White's liability will depend on whether that conduct violates

the FDCPA and Chapter 93A.  In other words, liability can be determined on a class-wide basis.

The common questions thus predominate over any potential individual questions.

> ### ii.  Superiority

A class action is the superior method if it will "achieve economies of time, effort, and

expense, and promote . . . uniformity of decision as to persons similarly situated, without

sacrificing procedural fairness or bringing about other undesirable results."  Amchem, 521 U.S.

at 615 (alterations in the original).  Further, class actions are superior if each plaintiff's cause of

action is the type that allows those plaintiffs to "pool claims which would be uneconomical to

litigate individually," Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 809 (1985); see also

Deposit Guar. Nat'l Bank v. Roper, 445 U.S. 326, 338 n.9 (1980) ("A significant benefit to

claimants who choose to litigate their individual claims in a class-action context is the prospect

of reducing their costs of litigation, particularly attorney's fees, by allocating such costs among

all members of the class who benefit from any recovery.").  Here, the court finds that the classes

are composed of many individual claims that would be too small to warrant litigation, and that

concentration of the class claims here would provide greater efficiency than individual litigation

and does not present any significant management issues in proceeding as a class action.  The

superiority requirement is therefore met.  Accordingly, Plaintiffs' Motion for Class Certification

[#30] is ALLOWED.

## V.    Summary Judgment

> ### A.  Summary Judgment Standard

A movant is entitled to summary judgment if "there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

    B.  *Legal Background*

    Congress enacted the FDCPA to eliminate "the use of abusive, deceptive, and unfair debt

collection practices."  Pollard v. Law Office of Mandy L. Spaulding, 766 F.3d 98, 101 (1st Cir.

2014) (quoting 15 U.S.C. § 1692(a)).  Among other acts, the FDCPA bars the use of any "false,

deceptive, or misleading representation or means in connection with the collection of any debt,"

15 U.S.C. § 1692e, and "unfair or unconscionable means to collect or attempt to collect any

debt."  Id. §1692f.

    Section 1692e includes a list of acts that constitute false, deceptive or misleading

representations, though the list is not exhaustive.  See id. § 1692e ("Without limiting the general

application of the foregoing, the following conduct is a violation . . . .");  Clomon v. Jackson, 988

F.2d 1314, 1318 (2d Cir. 1993) (A debt collection practice can be "false, deceptive, or

misleading" even where "it does not fall within any of the subsections of §1692e").  Among

§ 1692e's enumerated list is a "false representation" of "the character, amount, or legal status of

any debt."  Id. § 1692e(2)(A).  Section 1692f prohibits the use of unfair or unconscionable means

to collect or attempt to collect a debt.  In its—as with § 1692e, non-exhaustive—list is a

prohibition on "collection of any amount (including any interest, fee, charge, or expense

incidental to the principal obligation) unless such amount is expressly authorized by the

agreement creating the debt or permitted by law."  15 U.S.C. § 1692f(1).

    Whether collection efforts are unfair or deceptive must "be viewed from the perspective

of the hypothetical unsophisticated consumer."  Pollard, 766 F.3d at 103.  Although the

"standard" is an "objective one, which preserves an element of reasonableness," id. at 104

(noting that a "debt collector will not be held liable based on an individual consumer's

chimerical or farfetched reading"), the standard is meant to protect "all consumers, including the inexperienced, the untrained and the credulous." Id. at 103-04 (internal quotation marks omitted).

"The FDCPA is a strict liability statute that is to be construed liberally so as to effectuate its remedial purpose." Pettway v. Harmon Law Offices, P.C., No. 03-CV-10932-RGS, 2005 WL 2365331, at *3 (D. Mass. Sept. 27, 2005) (citing Russell v. Equifax A.R.S., 74 F.3d 30, 33 (2d Cir. 1996)); see also 15 U.S.C. § 1692k(c) (only an *affirmative defense* for debt collector to establish that the violation was unintentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error); Clark v. Capital Credit & Collection Servs., Inc., 460 F.3d 1162, 1176 (9th Cir. 2006).  To recover damages, an FDCPA plaintiff need not show "intentional conduct on the part of a debt collector." Pettway, 2005 WL 2365331, at *3 (citing Russell, 74 F.3d at 33).   A plaintiff also does not have to prove actual damages; and, that the debt is legitimately owed "has no bearing on the validity of the action." Id. (citing Baker v. GC Servs. Corp., 677 F.2d 775, 779-80 (9th Cir. 1982)).

The FDCPA applies to "attorneys who 'regularly' engage in consumer-debt collection activity, even when that activity consists of litigation." Heintz v. Jenkins, 514 U.S. 291, 299 (1995) (holding that the FDCPA applies to an attorney for a creditor who allegedly included in a letter to the debtor a false statement of the amount debtor owed to the creditor); see also McCollough v. Johnson, Rodenburg & Lauinger, LLC, 637 F.3d 939, 952 (9th Cir. 2011) (applying FDCPA to false statement in request for admissions); O'Connor v. Nantucket Bank, 992 F. Supp. 2d 24, 32 (D. Mass. 2014) (improper conduct by consumer-debt-collecting attorneys during litigation may violate the FDCPA).

### C.  The Inclusion of Undifferentiated Prejudgment Interest in the Statement of Claim Violates the FDCPA

Plaintiffs allege that White violated the FDCPA, 15 U.S.C. §1692e(2)(A), by falsely representing "the character, amount, or legal status" of their debts by including undifferentiated prejudgment interest in the lump sum demanded in the small claims court Statements of Claim. Rule 2 of the Massachusetts Uniform Small Claims Rules provides that a plaintiff "shall state specifically any amounts sought for damages . . . as well as the total amount being sought *exclusive of any prejudgment interest*." (emphasis added).  By instead including prejudgment interest in the total amount claimed in the Statements of Claim, Plaintiffs argue, White misled Plaintiffs as to the amount of debt that Plaintiffs owed.  White admits that he included undifferentiated prejudgment interest in the total amount demanded in the Statements of Claim, and he even admits that this conduct violates Small Claims Rule 2.  Pls.' Statement Material Facts for Pls.' Mot. Partial Summ. J. ¶ 7 [#42].  White only disputes that this conduct violates the FDCPA.

Including prejudgment interest in the total amount due, "viewed from the perspective of the hypothetical unsophisticated consumer," Pollard, 766 F.3d at 103, could mislead the consumer as to the amount of the debt actually owed, which in turn could make it difficult for the consumer to respond effectively to the Statement of Claim.  See Gabriele v. Am. Home Mortg. Servicing, Inc., 503 F. App'x 89, 94 (2d Cir. 2012) (noting that "communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection, violate the FDCPA"); cf. Pollard, 766 F.3d at 104 (in context of collection letter, letter is confusing "if, after reading it, the unsophisticated consume would be left unsure of her right to dispute the debt and request information concerning the original creditor.").

Small Claims Rule 2 requires small claims plaintiffs to state the total amount claimed *exclusive* of prejudgment interest.  The Commentary to the Rule noted that Rule 2 is intended to provide "the defendant with a breakdown of the amount being claimed."  When White violated this rule and included prejudgment interest in the lump sum demanded, he misrepresented—and therefore risked confusing Plaintiffs—the amount of debt to which Trinity EMS was entitled.  From the face of the Statements of Claim, Plaintiffs could not ascertain how much interest had been added to the principal debt.  This undifferentiated, lump sum demand risked influencing Plaintiffs' ability to make an intelligent decision as to whether and how to contest the Statements of Claim, including how to contest whether interest was properly calculated from the date of breach or the date of service.  Compare Fields v. Wilber Law Firm, P.C., 383 F.3d 562, 565-66 (7th Cir. 2004) (debtor stated claim for §1692e violation where attorney sent collection letter for total amount of debt that included attorney's fees without notifying debtor that amount included those fees because letter could have given debtor false impression of character of debt and confusion about the reason for the apparent increase in charges resulting from the attorney's fees) with Donohue v. Quick Collect, Inc., 592 F.3d 1027, 1034 (9th Cir. 2010) (complaint mistakenly calling a portion of total amount owed as interest, even though that portion included both interest and "pre-assignment finance charges," did not violate FDCPA because complaint accurately listed principal owed versus non-principal owed, only sought total debt amounts to which defendant was entitled, and therefore did not undermine plaintiff's ability to choose action concerning debt).

White argues that his conduct was a mere technical violation of Small Claims Rule 2, which in itself should not constitute a violation of the FDCPA.  White asserts that a mere violation of a state statute in debt collection does not necessarily constitute a violation of the

FDCPA.  See, e.g., Gallego v. Northland Grp. Inc., 814 F.3d 123, 127 (2d Cir. 2016) ("Accordingly, we join every other Circuit Court to have considered the question in concluding that violations of state and local debt collection statutes are not per se actionable under the FDCPA.").  This proposition, however, "does not mean that a violation of state claw can never *also* be a violation of the FDCPA."  Currier v. First Resolution Inv. Corp., 762 F.3d 529, 537 (6th Cir. 2014) (emphasis in the original) (filing invalid judgment lien violated not only state law but also the FDCPA).  White's conduct here is a violation of the FDCPA because, in wrongfully including prejudgment interest in the total amount owed in the Statements of Claim, White falsely represented the "character, amount, or legal status" of Plaintiffs' debt. 15 U.S.C. §1692e(2)(A).

Next, White argues that Plaintiffs are in effect attempting to use the FDCPA to enforce a state court remedy, which Plaintiffs are not allowed to do.  See Bentrud v. Bowman, Heintz, Boscia & Vician, P.C., 794 F.3d 871, 875 (7th Cir. 2015) (holding that debtor could not enforce arbitration clause in credit card agreement through the FDCPA because the "remedy sounds in breach of contract, not the FDCPA" and because the "FDCPA is not an enforcement mechanism for matters governed elsewhere by state and federal law.").  White avers that Plaintiffs are actually attempting to vacate the state small claims judgments against them, and that Small Claims Rule 8 provides a sufficient remedy and the proper method to vacate the state court judgments.  Mass. Uniform Small Claims Rule 8 (describing how the court, upon a party's application, may vacate or grant relief from any judgment or order for any cause that the court deems sufficient).  But, Plaintiffs do not seek to undo their state court judgments.  Instead, they seek a remedy against White for false representations during the debt collection process.

Similarly, White argues that Plaintiffs, by collaterally attacking the small claims debt-related judgments against them in state court, run afoul of the <u>Rooker-Feldman</u> doctrine.  That doctrine recognizes that federal question jurisdiction under 28 U.S.C. § 1331 is a grant of original jurisdiction and precludes a United States District court from exercising appellate jurisdiction over state court judgments, which Congress has reserved to the Supreme Court.  <u>See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>, 544 U.S. 280, 292 (2005).  A case cannot be dismissed based on the <u>Rooker-Feldman</u> doctrine where a plaintiff does not seek "redress of an injury *caused by* an allegedly erroneous state court decision."  <u>Davison v. Gov't of P.R.—P.R. Firefighters Corps.</u>, 471 F.3d 220, 222 (1st Cir. 2006) (emphasis in the original).  Again, Plaintiffs allege an injury that White caused through his deceptive debt collection acts; they do not seek to attack or vacate the small claims court judgments.  Indeed, this court's ruling in Plaintiffs' favor will not disturb the state court judgments against them.

Finally, White argues that including prejudgment interest in the total amount due in the Statement of Claims was not an FDCPA violation because White could have amended the Statements of Claim before the clerk made the wrongful "prejudgment interest on prejudgment interest" addition to the judgment under Mass. Gen. Laws ch. 231, § 6C.[7]  White cites <u>Johnson v. Riddle</u>, which held that an FDCPA violation through the instigation of a debt collection suit occurs when the debt collection complaint is served as opposed to when it is filed.  305 F.3d 1107, 1113-14 (10th Cir. 2002) (noting that the process server could have been recalled and the lawsuit abandoned before the debtor received the complaint).  But, the miscalculation of interest

---

[7] White refers to the potential risk that including undifferentiated prejudgment interest in the total amount sought could cause the clerk of the small claims court, when entering judgment, to mistakenly calculate interest on interest so that prejudgment interest was added into the judgment twice.

by the clerk of the court, while a potential harm of the violation, is not the violation itself. Instead, the violation occurred when White communicated misrepresentations about prejudgment interest to Plaintiffs by serving them with the small claims Statements of Claim.

Because White's conduct in including undifferentiated prejudgment interest as part of the total amount owed in the small claims Statements of Claim violated the FDCPA, Plaintiffs are entitled to partial summary judgment.

### D.   Running Prejudgment Interest from the Date Ambulance Services were Provided Violates the FDCPA

Plaintiff Lannan[8] moves for summary judgment as to liability on her claim that White violated the FDCPA by running prejudgment interest from the date that Trinity EMS provided ambulance services to her and not the date on which Trinity EMS demanded payment from her, and then including that calculation of prejudgment interest in the Statement of Claim.  White cross-moves, arguing that he is entitled to calculate prejudgment interest from the date service was provided.

Mass. Gen. Laws ch. 231, § 6C provides:

> In all actions based on contractual obligations, upon a verdict, finding or order for judgment for pecuniary damages, interest shall be added by the clerk of the court to the amount of damages, at the contract rate, if established, or at the rate of twelve per cent per annum *from the date of the breach or demand*. If the date of the breach or demand is not established, interest shall be added by the clerk of the court, at such contractual rate, or at the rate of twelve per cent per annum from the date of the commencement of the action . . . .

(Emphasis added).

---

[8] Plaintiff Winn does not claim that White ran prejudgment interest from the date of service in her Statement of Claim.  The Statement of Claim as to Winn sought a flat sum, which was less than the sum of Trinity EMS's bill plus prejudgment interest from the date of service.

White agrees with Plaintiff that the date of "demand" is the date on which a demand for payment is actually made.  See, e.g., Analysis Grp., Inc. v. Central Fla. Investments, Inc., 629 F.3d 18, 24 (1st Cir. 2010) (holding that, under Massachusetts law, submission of invoice established date of demand for purposes of calculating prejudgment interest).  White interprets the "date of the breach" as the date on which money was due, which, in turn, White interprets as the date that services are provided.[9]

White quotes Massachusetts Supreme Judicial Court cases for the general proposition that prejudgment interest is awarded to compensate for the deprivation of the ability to make use of money wrongfully withheld.  See Sterilite Corp. v. Cont'l Cas. Co., 494 N.E.2d 1008, 1011 (Mass. 1986) (award of interest is made "so that a person wrongfully deprived of the use of money should be made whole for his loss" (internal quotation marks omitted)); Perkins Sch. for the Blind v. Rate Setting Comm'n, 423 N.E.2d 765, 772 (Mass. 1981) (Mass. Gen. Laws ch. 231, § 6C "is designed to compensate a damaged party for the loss of use or unlawful detention of money").  White argues from this generalized proposition that the moment Trinity EMS provided Plaintiff ambulance services, Trinity EMS was deprived of the use of money, so was entitled to seek prejudgment interest from the date of provision of services.

These cases emphasize, however, that "there can be no improper detention of money until payment is due."  Perkins, 423 N.E.2d at 770; see also Restatement (Second) Contracts § 354 cmts. b and c ("Interest is not payable as damages for non-performance until performance is due" and "interest is always recoverable for the non-payment of money once payment has become due and there has been a breach.").  Each Plaintiff's "non-performance" did not occur until she failed

---

[9] White's additional citation to and line of argument under Jenney v. Airtek Corp., 521 N.E.2d 388 (Mass. 1988), is unconvincing.  Jenney addresses the date used for limitation of actions for claims of unpaid attorney's fees, not the date for accrual of interest.

to pay Trinity EMS's bill when it was due, and she therefore did not "breach" any agreement until then.  Cf. Boston Gas. Co. v. Century Indem. Co., 529 F.3d 8, 22 (1st Cir. 2008) (notice of potential of claims not enough to constitute "demand" informing defendant of the fact that performance is due); Town of Lexington v. Town of Bedford, 393 N.E.2d 321, 330 (Mass. 1979) (under Mass. Gen. Laws ch. 231, § 6C, for interest to run from date of demand, defendant must be informed "of the basis and extent of its obligation, as well as the fact that performance was then due.").[10]

Because White calculated prejudgment interest for the period prior to the date that Trinity EMS sent an invoice to Plaintiff, he violated Mass. Gen. Laws ch. 231, § 6C.  White sought prejudgment interest to which Trinity EMS was not entitled, and in doing so misrepresented the "the . . . amount . . . of [the] debt."  15 U.S.C. § 1692e(2)(A).  "Stating an incorrect amount of the debt undeniably violates section 1692e(2)(A)."  McDermott v. Marcus, Errico, Emmer & Brooks, P.C., 911 F. Supp. 2d 1, 59 (D. Mass. 2012), amended in part, 969 F. Supp. 2d 74 (D. Mass. 2013), aff'd in part, rev'd in part and remanded, 755 F.3d 109 (1st Cir. 2014).  Plaintiff Lannan is therefore entitled to partial summary judgment that White violated the FDCPA by seeking to collect from her prejudgment interest running from the date that Trinity EMS provided her ambulance services.

---

[10] *Sterilite* similarly does not stand for the proposition that prejudgment interest can start to run before an obligee receives a demand for payment or is even made aware of the obligation to pay. In *Sterilite*, an insurer, who had a duty to pay the insured's legal expenses, refused to pay.  494 N.E.2d 1008.  The court held that prejudgment interest should only run from when the insured paid its own legal expenses—when they were "wrongfully deprived of the use of money"—and not when the insurer refused to pay the insured's legal expenses, even though the refusal occurred *before* the insured was deprived of its money.  Id. at 1011 (interpreting Mass. Gen. Laws ch. 231, § 6C to avoid a "windfall" for the insured).

*E.  White Violated Chapter 93A*

The parties have cross-moved for summary judgment as to whether White violated Chapter 93A.  Plaintiffs argue that they were unsophisticated consumers and that White violated Chapter 93A by misleading them and by seeking to collect and collecting amounts of debt not owed.  White argues that he is entitled to summary judgment because Plaintiffs did not demonstrate the requisite injury under Chapter 93A and did not attach a demand letter to their amended complaint.[11]

White argues that Plaintiffs have failed to allege or establish any pecuniary loss, which, White argues, is required to recover under Chapter 93A.  Plaintiffs, however, have shown the requisite injury.  To warrant an award of damages under Chapter 93A, "plaintiff is required to prove that the defendant's unfair or deceptive act caused an adverse consequence or loss." Rhodes v. AIG Domestic Claims, Inc., 961 N.E.2d 1067, 1076 (Mass. 2012).  The types of injuries recognized by chapter 93A include a "loss of money, loss of property, or personal injury," as well as the "invasion of any legally protected interest of another." Hershenow v. Enterprise Rent-A-Car Co. of Bos., Inc., 840 N.E.2d 526, 533 (Mass. 2006) (noting that car renters who were subject to restrictions in damage waivers that violated state law could not recover under chapter 93A because they had returned the cars without damage and were therefore not injured).

Massachusetts law is not perfectly clear as to the injury required under Chapter 93A.  See Rule v. Fort Dodge Animal Health, Inc., 607 F.3d 250, 254-55 (1st Cir. 2010) (noting that recent Supreme Judicial Court cases seem to have returned to the requirement of economic injury, but

---

[11] White also moves on the ground that he did not violate the FDCPA, and consequently did not violate Chapter 93A.  Because the court finds that White violated the FDCPA, White cannot obtain summary judgment on that ground.

that there are exceptions to the general rule); Tyler v. Michaels Stores, Inc., 984 N.E.2d 737, 746

(Mass. 2013) (noting that, while economic injury may not be required, the injury must be

"distinct from the" claimed unfair or deceptive practice itself).  Regardless of difficulties in

answering this question in some cases, Plaintiffs here have established requisite injury.  The

wrongful inclusion of undifferentiated prejudgment interest in the small claims complaints and

the inclusion of prejudgment interest calculated from the date of provision of services were

"likely to have some kind of negative impact on the recipient, particularly in terms of assertion

of legal rights or financial decision-making." Gathuru v. Credit Control Servs., Inc., 623 F. Supp.

2d 113, 123 (D. Mass. 2009) (finding Chapter 93A injury based on attempted collection of debt

amounts not owed).  White's actions exposed Plaintiffs to the risk that they would either pay

more than the amount actually owed or, alternatively, settle their small claims cases for a sum

higher than they could have negotiated for had White made accurate representations in the

Statements of Claim.  Cf. Iannacchino v. Ford Motor Co., 888 N.E.2d 879, 886 (Mass. 2008)

(noting that plaintiffs were injured by buying cars that were defective, even if they had not

malfunctioned, because plaintiffs paid more for cars than they were actually worth).

White also argues that Plaintiffs cannot establish that they ever sent a demand letter to

White because Plaintiffs failed to attach a demand letter to their Amended Complaint [#9].

Under Chapter 93A, a plaintiff must mail to the defendant a "written demand for relief,

identifying the claimant and reasonably describing the unfair or deceptive act or practice relied

upon."  Mass. Gen. Laws ch. 93A, § 9(3).  This requirement is a "prerequisite to suit."  Rodi v.

S. New Eng. Sch. of Law, 389 F.3d 5, 19 (1st Cir. 2004) (quoting Entrialgo v. Twin City Dodge,

Inc., 333 N.E.2d 202, 204 (Mass. 1975)).

In the <u>Amended Complaint,</u> Plaintiffs referred to an "Exhibit G," which was purported to be the demand letter, but Plaintiffs neglected to file the document.  Nevertheless, Plaintiff did allege and continue to assert that they sent White a demand letter.  Am. Compl. ¶ 50.  And, White admitted that he received the demand letter.  Defs.' Answer Pls.' Am. Compl. ¶ 50 ("The defendant admits that . . . a letter was sent to the defendant which purported to be a demand letter under [chapter] 93A and that such letter was received by the defendant.").  White has not established for purposes of his motion that Plaintiffs did not send a Chapter 93A demand letter; instead, it is undisputed that Plaintiffs *did* send a demand letter and that White received it.

Because Plaintiffs have established injury under Chapter 93A and that they sent a demand letter to White, the remaining analysis is simple.  Chapter 93A "provides a cause of action for a plaintiff who 'has been injured,' by 'unfair or deceptive acts or practices.'" <u>Young v. Wells Fargo Bank, N.A.</u>, 717 F.3d 224, 240 (1st Cir. 2013) (quoting Mass. Gen. Laws ch. 93A, §§ 2(a), 9(1)).  The Supreme Judicial Court has held that a practice is unfair if it is within "the penumbra of some common-law, statutory, or other established concept of unfairness . . . is immoral, unethical, oppressive, or unscrupulous; [and] . . . causes substantial injury." <u>Linkage Corp. v. Trs. of Boston Univ.</u>, 679 N.E.2d 191, 209 (Mass. 1997) (alterations in the original, internal quotation marks and citations omitted).  The FDCPA is within that penumbra of statutory concepts of unfairness, as a violation of the FDPCA is a *per se* violation of Chapter 93A.  <u>See</u> <u>McDermott v. Marcus, Errico, Emmer & Brooks, P.C.</u>, 775 F.3d 109, 123 (1st Cir. 2014) (The "FDCPA establishes that an unfair debt collection act in violation of the FDCPA is a per se violation of the [Federal Trade Commission ("FTC")] Act.  And because Massachusetts has 'wholly incorporated' the FTC Act and its interpretation into state consumer protection law, a violation of the FDCPA not only per se violates the FTC Act, it also constitutes a per se

Chapter 93A violation.").  Because this court finds that White has violated the FDCPA, the court

also finds that Plaintiffs are entitled to partial summary judgment as to their Chapter 93A

count.[12]

VI.    <u>Conclusion</u>

For the foregoing reasons, <u>Plaintiffs' Motion for Class Certification</u> [#30] is ALLOWED,

<u>Plaintiffs' Motion for Partial Summary Judgment</u> [#40] is ALLOWED, and <u>Defendant Robert R.

White's Motion for Summary Judgment</u> [#35] is DENIED.

Pursuant to Federal Rule of Civil Procedure 23(c)(1)(B), which requires the class

certification order to "define the class and the class claims, issues or defenses," the classes are

certified as follows:

The "FDCPA Class":

> All individuals in Massachusetts who, since October 15, 2013,
> were sued or served with a complaint (a) as to whose alleged
> debt  Defendants included prejudgment interest in the total
> amount  claimed in a Small Claims Statement of Claim, or (b)
> where  Defendants added prejudgment interest to an alleged debt
> to  Trinity EMS for a period beginning at or about the date of
> service  by Trinity EMS instead of the date Trinity EMS first
> billed for  payment of its services.

The "Chapter 93A Class":

> All individuals in Massachusetts who, since October 15, 2010,
> were sued or served with a complaint (a) as to whose alleged
> debt  Defendants included prejudgment interest in the total
> amount  claimed in a Small Claims Statement of Claim, or (b)
> where Defendants added prejudgment interest to an alleged debt

---

[12] White also moved for summary judgment on the grounds that (i) Plaintiff Ann Winn's claims
are barred by res judicata as a result of her voluntary dismissal of her counterclaims against
Trinity EMS for improper inclusion of debt in the small claims complaint against her; (ii) both
Plaintiffs' claims are barred by collateral estoppel because they had already litigated the amount
of debt that they owed to Trinity EMS; and (iii) Plaintiff Carol Lannan's FDCPA claim is time-
barred because it was filed more than one year after Defendants' alleged FDCPA violation.  For
the reasons set forth *supra* at 8-12, these defenses are without merit.

> to Trinity EMS for a period beginning at or about the date of
> service by Trinity EMS instead of the date Trinity EMS first
> billed for payment of its services.

Pursuant to Rule 23(g) and the reasons discussed above, the court appoints Charles M. Delbaum of the National Consumer Law Center, Elizabeth Ryan of Bailey & Glasser LLP, and Ethan Horowitz of the Northeast Justice Center as Class Counsel.

By May 25, 2016, after conferring with White's counsel, Class Counsel shall provide a proposed notice—which shall include a description of the claims in this case, the Classes, the Class representatives, and Class Counsel—and a plan for providing notice of the certification of the Classes to the Classes.  White may file any objections to the form of notice or plan for providing notice by June 1, 2016.

IT IS SO ORDERED.

May 11, 2016                                      /s/ Indira Talwani
                                                 United States District Judge